UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Robert Allan Mingo**, | Court File No. |
| Plaintiff, | |
| vs. | **COMPLAINT WITH JURY DEMAND** |
| **JADT Food Group, LLC**, doing business as "McDonalds;" and **McDonald's Corporation**, | |
| Defendants. | |

# INTRODUCTION

1. This is an action for money damages and declaratory and injunctive relief brought pursuant to the Americans with Disabilities Act (ADA) and the Minnesota Human Rights Act (MHRA).

2. It is alleged that the Defendants unlawfully discriminated against Plaintiff under the ADA and MHRA when they mocked and humiliated him, refused him access to their restaurant, refused to serve him, and provided unequal and substandard service to him as compared to other similarly situated customers, all because of Plaintiff's disability and Plaintiff's attempts to access Defendants' restaurant with a service dog.

# JURISDICTION

3. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law pursuant to 28 U.S.C. § 1367.

## VENUE

4. This Court is the proper venue for this proceeding under 28 U.S.C. § 1391, as the material events and occurrences giving rise to Plaintiff's cause of action occurred within the State of Minnesota.

## PARTIES

5. Plaintiff Robert Mingo is an individual person and was at all material times a resident of Minneapolis, MN, and of full age.

6. Defendant JADT Food Group, LLC ("JADT"), is a Minnesota Limited Liability Company. JADT is an owner and/or operator and/or franchisee of a McDonald's restaurant located at 916 W Broadway, Minneapolis, MN 55411.

7. Defendant McDonald's Corporation is a Delaware corporation and an owner and/or franchisor of a McDonald's restaurant located at 916 W Broadway, Minneapolis, MN 55411. Upon information and belief, Defendant McDonald's corporation maintains substantial control over the training of JADT employees, the operation of JADT's McDonald's restaurant, and JADT's compliance with state and federal laws and regulations.

## FACTS

8. Plaintiff Robert Mingo is a 52-year-old resident of North Minneapolis. Mr. Mingo is physically disabled due to muscular dystrophy and a slipped disk in his back. Because of his physical conditions, Mr. Mingo cannot walk and transports himself using a wheelchair. Mr. Mingo's ability to use his arms and hands is also severely limited.

9. Mr. Mingo also owns a service dog, "Max," specifically trained to assist Mr. Mingo with daily living activities. Max can perform a number of tasks, on command, that significantly

assist Mr. Mingo in his daily life. These tasks include, but are not limited to, the following: (a) opening and closing doors; (b) retrieving and bringing Mr. Mingo his life alert device; (c) putting Mr. Mingo's clothing into a laundry basket; (d) picking up items dropped by Mr. Mingo; and (e) removing Mr. Mingo's clothing, such as socks and jackets. When Mr. Mingo leaves the house, he often brings Max with him for assistance.

10. One day in August of 2012, at approximately 10:00 a.m., Mr. Mingo decided to visit Defendants' McDonald's restaurant located at 916 W Broadway, Minneapolis, MN 55411, for breakfast. Mr. Mingo was in his wheelchair and with Max. Max was wearing a red vest.

11. Mr. Mingo entered the restaurant and proceeded to the service counter. John Doe 1, a young Caucasian employee, approximately 20 years old with blond hair, whose identity is presently unknown to Plaintiff, was at the service counter taking orders. Two young ladies were in line before Mr. Mingo. John Doe 1 took their orders and treated them politely and with respect.

12. John Doe 1 then approached Mr. Mingo and told him that McDonald's cannot serve him because of the dog. Mr. Mingo, in response to Doe 1's statement, exited the restaurant and proceeded to the drive-through. Once there, John Doe 1 made contact with Mr. Mingo again and told him, "We don't serve these things in the drive-through." Mr. Mingo then asked how he can place his order, inside or outside, but he did not obtain a response from John Doe 1.

13. Mr. Mingo then returned inside the restaurant and told Doe 1 that he would like to purchase food at the restaurant. Mr. Mingo explained to Doe 1 that it is illegal under the ADA to refuse him service. Doe 1 then agreed to serve Mr. Mingo but also told Mr. Mingo that he is prohibited from returning to the restaurant with his dog. Shortly after, Mr. Mingo purchased his breakfast and left the restaurant.

14. During the incident described above, other customers were in the store and observed what happened. These customers, who did not appear to have any physical disabilities, were treated favorably the John Doe 1 while Mr. Mingo experienced discrimination. In addition, since other people were present and observed the incident above, Mr. Mingo felt severely ashamed, humiliated, and embarrassed.

15. On May 6, 2013, at approximately 1:00 p.m., Mr. Mingo visited the same restaurant again for lunch. As last time, Mr. Mingo was in his wheelchair and with Max. Mr. Mingo entered the restaurant with Max and proceeded to the service counter.

16. There were numerous people sitting and eating inside the restaurant. There were 2-3 people waiting in line before Mr. Mingo and there were also 4 young men standing next to the counter. Two females were taking orders at the counter and Mr. Mingo placed his order without any issues.

17. As Mr. Mingo was waiting for his food, the restaurant manager approached Mr. Mingo and told Mr. Mingo that he had to leave. The manager was African-American and in his mid-twenties. Mr. Mingo explained that he already paid for his food. The manager responded that Mr. Mingo could not be inside the restaurant with his dog. Mr. Mingo then stated that he wouldn't leave until he got his food.

18. The manager then demanded to see documentation stating that Max is a service dog. Mr. Mingo, believing that such a request is illegal under the ADA, told the manager that him being in a wheelchair is sufficient documentation.

19. The manager then stated, very loudly, "Fine, get your food and get out of here. You can't go into the dining area with the dog." Mr. Mingo responded, "The law says I can." The manager then stated, "I am the manager here and I am the law." At this point, the four young men who

were standing by the counter (who appeared to be acquaintances the manager) as well as some other customers started to laugh.

20. Shortly after, Mr. Mingo received his bag of food and an empty fountain cup. During this entire time, the manager was watching Mr. Mingo and waiting for him to leave. The manager then instructed Mr. Mingo to leave. Mr. Mingo responded that he wasn't planning to eat inside the restaurant, but that he legally could if he wanted to.

21. Mr. Mingo then asked if he could jut fill his cup and then leave. The manager responded, "Fine, I don't want you in my store again." Mr. Mingo then filled his cup and left the restaurant.

22. During the incident described above, other customers were in the store and observed what happened. These customers, who did not appear to have any physical disabilities, were treated favorably the restaurant manager while Mr. Mingo experienced discrimination. In addition, since other people were present, observed the incident above, and laughed at Mr. Mingo, Mr. Mingo felt severely ashamed, humiliated, and embarrassed.

23. As a result of the Defendants' actions, Mr. Mingo no longer visits Defendants' McDonald's Restaurant.

24. As a result of the Defendants' actions, Mr. Mingo suffered shame, humiliation, and embarrassment.

25. As a result of the Defendants' actions, Mr. Mingo suffered emotional/psychological trauma, anguish, and distress, including depressed mood, stress, worry, anxiety, and diminished quality and enjoyment of life.

## **CLAIMS FOR RELIEF**

### **COUNT 1: 42 U.S.C. § 12182 – ADA PUBLIC ACCOMMODATIONS DISCRIMINATION**

26. Paragraphs 1 through 25 are incorporated herein by reference as though fully set forth.

27. Plaintiff is an individual with a "disability" as defined under 42 U.S.C. § 12102.

28. Defendants' McDonald's Restaurant, located at 916 W Broadway, Minneapolis, MN 55411, is a place of "public accommodation" as defined under 42 U.S.C. § 12181.

29. Based on the above factual allegations, Defendants unlawfully discriminated against Plaintiff on the basis of his disability in violation of the ADA when Defendants denied Plaintiff equal service in their restaurant, humiliated and embarrassed Plaintiff inside their restaurant, treated Plaintiff differently and inappropriately inside their restaurant as compared to other non-disabled customers, and failed to make reasonable modifications in their policies, practices, procedures, and training to ensure that disabled individuals with service animals are allowed equal service inside their restaurants.

30. As a result of these violations, Plaintiff suffered damages as aforesaid.

### **COUNT 2: MINN. STAT. § 363A.11 – MHRA PUBLIC ACCOMMODATIONS DISCRIMINATION**

31. Paragraphs 1 through 25 are incorporated herein by reference as though fully set forth.

32. Plaintiff is an individual with a "disability" as defined under Minn. Stat. §363A.03.

33. Defendants' McDonald's Restaurant, located at 916 W Broadway, Minneapolis, MN 55411, is a "place of public accommodation" as defined under Minn. Stat. §363A.03.

34. Based on the above factual allegations, Defendants unlawfully discriminated against Plaintiff on the basis of his disability in violation of the MHRA when Defendants denied Plaintiff equal service in their restaurant, humiliated and embarrassed Plaintiff inside their restaurant, treated Plaintiff differently and inappropriately inside their restaurant as compared to other

non-disabled customers, and failed to make reasonable modifications in their policies, practices, procedures, and training to ensure that disabled individuals with service animals are allowed equal service inside their restaurants.

35. As a result of these violations, Plaintiff suffered damages as aforesaid.

## RELIEF REQUESTED

**WHEREFORE, Plaintiff requests that this Court grant the following relief:**

a. Issue an order granting Plaintiff judgment against Defendants, finding that Defendants discriminated against Plaintiff in violation of the ADA and MHRA and that Defendants are liable to Plaintiff for all damages resulting from these violations.

b. Award of compensatory damages to Plaintiff against all Defendants, jointly and severally.

c. Award of punitive damages to Plaintiff against all Defendants, jointly and severally.

d. Award of reasonable attorney's fees and costs to Plaintiff pursuant to 42 U.S.C. § 12205 and Minn. Stat. § 363A.33.

e. A declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that (1) Defendants unlawfully discriminated against Plaintiff in violation of the ADA and MHRA and (2) Defendants' policies, practices, procedures, and training of restaurant employees, specifically pertaining to rights of disabled individuals with service animals, are inadequate and in violation of the ADA and MHRA.

f. A permanent injunction, ordering Defendants as follows: (1) to immediately terminate any and all forms of discrimination against disabled individuals with service animals by McDonald's restaurant employees; (2) to develop and provide proper training for McDonald's restaurant employees on ADA public accommodations disability discrimination

provisions; (3) to require each McDonald's restaurant employee to read and acknowledge understanding of ADA's 2010 Revised Requirements for Service Animals, attached hereto as Exhibit 1; and (4) to require McDonald's Restaurant, located at 916 W Broadway, Minneapolis, MN 55411, to display, for a period of 12 consecutive months, a visible and conspicuous sign, on each public entry door to their restaurant, stating as follows: "Service Animals are Allowed in this Restaurant."

g. Award of such other and further relief as this Court may deem appropriate.

**THE PLAINTIFF HEREBY DEMANDS A JURY TRIAL.**

THE LAW OFFICE OF ZORISLAV R. LEYDERMAN

Dated: April 2, 2014          By: s/ Zorislav R. Leyderman
                                  ZORISLAV R. LEYDERMAN
                                  Attorney License No. 0391286
                                  Attorney for Plaintiff
                                  The Law Office of Zorislav R. Leyderman
                                  222 South 9th Street, Suite 1600
                                  Minneapolis, MN 55402
                                  Tel: (612) 876-6626
                                  Email: zrl@ZRLlaw.com

**U.S. Department of Justice**
Civil Rights Division
*Disability Rights Section*

EXHIBIT 1





# Service Animals

The Department of Justice published revised final regulations implementing the Americans with Disabilities Act (ADA) for title II (State and local government services) and title III (public accommodations and commercial facilities) on September 15, 2010, in the Federal Register. These requirements, or rules, clarify and refine issues that have arisen over the past 20 years and contain new, and updated, requirements, including the 2010 Standards for Accessible Design (2010 Standards).

## Overview

This publication provides guidance on the term "service animal" and the service animal provisions in the Department's revised regulations.

■ Beginning on March 15, 2011, only dogs are recognized as service animals under titles II and III of the ADA.

■ A service animal is a dog that is individually trained to do work or perform tasks for a person with a disability.

■ Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go.

## How "Service Animal" Is Defined

**Service animals are defined as dogs that are individually trained to do work or perform tasks for people with disabilities.** Examples of such work or tasks include guiding people who are blind, alerting people who are deaf, pulling a wheelchair, alerting and protecting a person who is having a seizure, reminding a person with mental illness to take prescribed medications, calming a person with Post Traumatic Stress Disorder (PTSD) during an anxiety attack, or performing other duties. Service animals are working animals, not pets. The work or task a dog has been trained to provide must be directly related to the person's disability. Dogs whose sole function is to provide comfort or emotional support do not qualify as service animals under the ADA.

(continued, page 2)

This definition does not affect or limit the broader definition of "assistance animal" under the Fair Housing Act or the broader definition of "service animal" under the Air Carrier Access Act.

Some State and local laws also define service animal more broadly than the ADA does.  Information about such laws can be obtained from that State's attorney general's office.

### Where Service Animals Are Allowed

**Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**  For example, in a hospital it would be inappropriate to exclude a service animal from areas such as patient rooms, clinics, cafeterias, or examination rooms.  However, it may be appropriate to exclude a service animal from operating rooms or burn units where the animal's presence may compromise a sterile environment.

### Service Animals Must Be Under Control

**Under the ADA, service animals must be harnessed, leashed, or tethered, unless these devices interfere with the service animal's work or the individual's disability prevents using these devices.**  In that case, the individual must maintain control of the animal through voice, signal, or other effective controls.

### Inquiries, Exclusions, Charges, and Other Specific Rules Related to Service Animals

- When it is not obvious what service an animal provides, only limited inquiries are allowed.  Staff may ask two questions:  (1) is the dog a service animal required because of a disability, and (2) what work or task has the dog been trained to perform.  Staff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task.

- Allergies and fear of dogs are not valid reasons for denying access or refusing service to people using service animals.  When a person who is allergic to dog dander and a person who uses a service animal must spend time in the same room or facility, for example, in a school classroom or at a homeless shelter, they both should be accommodated by assigning them, if possible, to different locations within the room or different rooms in the facility.

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken.  When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.

Revised ADA Requirements:  Service Animals

- Establishments that sell or prepare food must allow service animals in public areas even if state or local health codes prohibit animals on the premises.

- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.  In addition, if a business requires a deposit or fee to be paid by patrons with pets, it must waive the charge for service animals.

- If a business such as a hotel normally charges guests for damage that they cause, a customer with a disability may also be charged for damage caused by himself or his service animal.

- Staff are not required to provide care or food for a service animal.

### Miniature Horses

**In addition to the provisions about service dogs, the Department's revised ADA regulations have a new, separate provision about miniature horses that have been individually trained to do work or perform tasks for people with disabilities.**  (Miniature horses generally range in height from 24 inches to 34 inches measured to the shoulders and generally weigh between 70 and 100 pounds.)  Entities covered by the ADA must modify their policies to permit miniature horses where reasonable.  The regulations set out four assessment factors to assist entities in determining whether miniature horses can be accommodated in their facility.  The assessment factors are (1) whether the miniature horse is housebroken; (2) whether the miniature horse is under the owner's control; (3) whether the facility can accommodate the miniature horse's type, size, and weight; and (4) whether the miniature horse's presence will not compromise legitimate safety requirements necessary for safe operation of the facility.

**For more information about the ADA, please visit our website or call our toll-free number.**

ADA Website
**www.ADA.gov**
To receive e-mail notifications when new ADA information is available,
visit the ADA Website's home page and click the link near the top of the middle column.

**ADA Information Line**
800-514-0301 (Voice) and 800-514-0383 (TTY)
24 hours a day to order publications by mail.
M-W, F 9:30 a.m. – 5:30 p.m., Th 12:30 p.m. – 5:30 p.m. (Eastern Time)
to speak with an ADA Specialist.  All calls are confidential.

For persons with disabilities, this publication is available in alternate formats.

Duplication of this document is encouraged.  July 2011

3